MALCOLM A. SUSSEL, Plaintiff–Appellant, Cross–Appellee, v. CITY AND COUNTY OF HONOLULU CIVIL SERVICE COMMISSION; HIROO "WOODY" MIYAGI, individually, and in his capacity as Chairman of the aforesaid Commission; ERNEST DIAS, individually, and in his capacity as a member of the aforesaid Commission; BEVERLY NAGY, individually, and in her capacity as a member of the aforesaid Commission; ISABEL TAGALA, individually, and in her capacity as a member of the aforesaid Commission; and NEIL SILVA, individually, and in his capacity as a member of the aforesaid Commission, Defendants–Appellees, Cross–Appellants

NOS. 13430 & 13484

(CIV. NO. 88–2509–08)

DECEMBER 19, 1989

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

102

## OPINION OF THE COURT BY NAKAMURA, J.

The question in this interlocutory appeal and cross–appeal from the Findings of Fact, Conclusions of Law, and Order Granting in Part and Denying in Part Plaintiff's Motion for Preliminary Injunction entered by the Circuit Court of the First Circuit is whether "actual bias" or "an appearance of impropriety" should be the test for disqualifying a member of the civil service commission whose impartiality has been challenged by the public employee who brought an appeal from an adverse action by his employing authority. Because an impartial tribunal is an essential component of due process in a quasi–judicial proceeding and "justice must satisfy the appearance of justice[,]" *Offutt v. United States*, 348 U.S. 11, 14 (1954), we conclude "an appearance of impropriety" is the proper standard and any commissioner whose impartiality might reasonably be questioned should be disqualified from hearing the appeal.

### I.

Malcolm A. Sussel was appointed Administrator of the Oahu Civil Defense Agency (OCDA) on June 2, 1982 by Mayor Eileen Anderson after he applied for the position, took a written examina-

tion administered by the Department of Civil Service of the City
and County of Honolulu, and was interviewed by a selection board.
The position, he understood, was a civil service position, i.e., one
subject to protection under the "system of personnel administra-
tion based on merit principles and generally accepted methods
governing the classification of positions and the employment, con-
duct, movement and separation of public officers and employ-
ees[]" prescribed by the City's charter. Revised Charter of the City
& County of Honolulu (Rev. Charter), chapter 3, section 6–302.
He therefore assumed the system provided "[r]easonable job secu-
rity for the competent employee[]" who occupied the position and
he could not be moved arbitrarily therefrom. *Id.*

But shortly after Frank A. Fasi was elected mayor again after a
hiatus of four years, Sussel learned the mayor–elect intended to
name George Kekuna Administrator of the OCDA. Sussel wrote
Mr. Fasi advising him that the post was not exempted from civil
service and asking the mayor–elect to reconsider his decision. Mr.
Fasi, however, was not dissuaded by Sussel's plea; upon assuming
office in January of 1985, he appointed Mr. Kekuna as the Admin-
istrative Assistant to the City's Managing Director. The Managing
Director assigned Mr. Kekuna the powers and duties that had been
exercised by the Administrator of the OCDA, and Mr. Sussel was
relegated to tasks entailing lesser responsibilities.

Deeming the action a demotion, Mr. Sussel appealed to the
Honolulu Civil Service Commission. He averred the demotion
was a politically motivated act of the mayor breaching civil service
policies and rules. Though the appeal was filed in January of 1985,
the commission failed to conduct a hearing thereon for nine
months. In the meantime, the composition of the commission had
changed. By the time the hearing was convened, two of the four
commissioners who were appointed by Mayor Anderson had been
replaced by appointees of Mayor Fasi.

The hearing commenced with deputies of the Corporation
Counsel advising the commission and representing the employing

authority. Mr. Sussel moved unsuccessfully to disqualify the deputy assigned to provide legal advice to the commission, citing Hawaii Revised Statutes (HRS) § 76–47 to support his position.[1] After hearing the evidence presented by the employee and the employing authority, the commission ruled the position to which Mr. Sussel had been appointed was not a civil service position.

Mr. Sussel sought judicial review of the administrative decision in the Circuit Court of the First Circuit.[2] The circuit court reversed the commission, holding the position to which Malcolm Sussel had been appointed was subject to civil service protection. The court remanded the case to the civil service commission for a determination of the merits of Mr. Sussel's appeal.

Upon remand of the case, Mr. Sussel moved to disqualify all members of the commission from hearing his appeal. They were, he averred, prejudicially biased because of the civil action then pending in the federal district court. *See supra* note 2. When the disqualification motion was denied, he filed a civil action in the circuit court, reiterating the claims alleged in the federal action and asserting a new claim premised on the commissioners' refusal to remove themselves from his appeal. The state court suit was re-

---

[1] HRS § 76–47 provides in part that:

> When an appeal hearing is before a county civil service commission, the attorney general shall be counsel for the commission and the county attorney or corporation counsel shall be counsel for the appointing authority. If, however, an appeal hearing is before the state commission, the attorney general shall be counsel for the appointing authority and the county attorney or corporation counsel of the county in which the appeal hearing is being conducted shall be counsel for the commission.

The Corporation Counsel takes the position that the provision does not apply to the City and County of Honolulu. We do not reach the question of whether the City's position is correct or not in this appeal.

[2] Before the circuit court ruled, however, Mr. Sussel filed a complaint in the United States District Court for the District of Hawaii, alleging that the members of the commission and others had deprived him of his constitutional rights, including the right to a fair hearing.

moved to the federal district court in June of 1988 and consolidated with the earlier civil action. The federal court, however, decided to abstain from ruling on Mr. Sussel's claims against the commissioners and the other defendants in the suits.

In August of 1988, Mr. Sussel brought yet another action in the circuit court. He prayed, among other things, for preliminary relief enjoining the commissioners from hearing his appeal. He called the circuit court's attention to this court's decision in *Honolulu Roofing Co. v. Felix*, 49 Haw. 578, 426 P.2d 298 (1967), where we directed a circuit judge to recuse himself because the circumstances were such as to raise doubts about his fairness, and urged the circuit court to apply "an appearance of impropriety" test in the situation at hand and disqualify the commissioners.

The circuit judge concluded a preliminary injunction should be issued. Applying an "actual bias" test, she concluded one of the five commissioners should be disqualified. She further concluded the commission's chairman could not be disqualified under the foregoing standard, but she found his sitting in judgment of Mr. Sussel's claim of a wrongful politically motivated demotion would give "an appearance of impropriety." Though she did not enjoin the chairman's participation in the appeal, she recommended that he recuse himself. She neither enjoined the participation of the other commissioners in the appeal nor suggested that they recuse themselves.

The circuit judge also granted Mr. Sussel leave to seek interlocutory review of her ruling that a civil service commissioner is disqualified from hearing a public employee's appeal from an adverse action of the employing authority only upon a demonstration of "actual bias."

II.

Mr. Sussel seeks a ruling on appeal that the circuit court erred in applying an "actual bias" test in judging a civil service commis-

sioner's qualification to sit in judgment of a public employee's appeal to the commission from a demotion. The commission and the commissioners, who have cross–appealed, urge a reversal of the disqualification of Commissioner Ernest Dias. Thus, the dispositive issue before us is what standard applies in deciding whether a civil service commissioner is disqualified or not.

### A.

The civil service commission is the body within the City government empowered to hear employee appeals. Rev. Charter, section 6–310. "Any person aggrieved by any action of the director of civil service or who has been suspended, demoted or dismissed may appeal to the . . . commission for redress, pursuant to its rules and regulations." Rev. Charter, section 6–308. The commission, therefore, is the administrative agency authorized by law to adjudicate Mr. Sussel's claim that he has been deprived of certain rights and privileges bestowed by the "system of personnel administration based on merit principles" which has been adopted by the City. Rev. Charter, section 6–302.

"[T]here are certain fundamentals of just procedure which are the same for every type of tribunal and every type of proceeding." R. Pound, *Administrative Law* 75 (1942). "Concededly, a 'fair trial in a fair tribunal is a basic requirement of due process.' *In re Murchison*, 349 U.S. 133, 136 (1955). This applies to administrative agencies which adjudicate as well as to courts. *Gibson v. Berryhill*, 411 U.S. 564, 579 (1973)." *Withrow v. Larkin*, 421 U.S. 35, 46–47 (1975). Of course, "a biased decisionmaker [is] constitutionally unacceptable[.]" *Id.* at 47. But "no one would argue seriously that the disqualification of [decision–makers] on grounds of actual bias . . . prevents unfairness in all cases." *State v. Brown*, 70 Haw. 459, 467, 776 P.2d 1182, 1187 (1989). So "our system of [justice] has always endeavored to prevent even the probability of unfairness." *In re Murchison, supra.*

The Supreme Court teaches us too that justice can "perform its high function in the best way [only if it satisfies] 'the appearance of justice.' *Offutt v. United States*, 348 U.S. 11, 14." *In re Murchison, supra.* For in a popular government, "'justice must not only be done but must manifestly be seen to be done . . . .' *Rex v. Justices of Bodmin*, [1947] 1 K.B. 321, 325." *Joint Anti–Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 172 n.19 (Frankfurter, J., concurring) (1951)). And,

> "[t]here can be little question that use of a truly independent adjudicator is essential to attainment of this goal. Indeed, if there exists any reasonable doubt about the adjudicator's impartiality at the outset of a case, provision of the most elaborate procedural safeguards will not avail to create [an] appearance of justice."

M. Redish & L. Marshall, *Adjudicatory Independence and the Values of Procedural Due Process*, 95 Yale L.J. 455, 483–84 (1986). Our Code of Judicial Conduct and a recent opinion of this court reflect these teachings.

An issue in *State v. Brown* was "whether a judge who causes a criminal contempt proceeding to be instituted may then sit with impunity in judgment of the accused." 70 Haw. at 465, 776 P.2d at 1187. We ruled the judge could not do so, relying in part on *Tumey v. Ohio*, 273 U.S. 510, 532 (1927), where the Court said:

> Every procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law."

Our ruling, we noted, was "consistent with our general admonition [to judges] that 'A Judge Should Avoid Impropriety and the Appearance of Impropriety in all his Activities,' Code of Judicial Conduct, Canon 2, and our expectation that [a judge would] 'disqualify himself in a proceeding in which his impartiality might rea-

sonably be questioned[.]' Code of Judicial Conduct, Canon 3 C.(1)." *State v. Brown*, 70 Haw. at 467 n.3, 776 P.2d at 1188 n.3.

Since the fundamentals of just procedure impose a requirement of impartiality on "administrative agencies which adjudicate as well as [on] courts[,]" *Withrow v. Larkin*, 421 U.S. at 46, we see no reason why an administrative adjudicator should be allowed to sit with impunity in a case where the circumstances fairly give rise to an appearance of impropriety and reasonably cast suspicion on his impartiality. *State v. Brown*, 70 Haw. at 467 n.3, 776 P.2d at 1188 n.3. "Few situations more severely threaten trust in the [adjudicative] process than the perception that a [party] never had a chance because the decisionmaker may have owed the other side special favors." M. Redish & L. Marshall, *supra*, at 483.

### B.

The circuit court, after hearing Malcolm Sussel's motion for a preliminary injunction, found no evidence that Commissioners Tagala, Nagy, and Silva were biased against him or that their participation in his civil service appeal would create "an appearance of impropriety." It found "evidence of [Commissioner] Dias' actual bias against Sussel." And it found Commission Chairman Miyagi "has known Mayor Frank F. Fasi for many years[,] . . . has contributed to [the mayor's and the managing director's] fund raisers[, and] is the president and . . . majority stockholder (70%) of MTL, Inc., a non–profit corporation which is under exclusive contract . . . to provide bus service to the City."

The court concluded "the 'actual bias' standard proposed by the Defendants [was] applicable to the . . . case[,]" rejecting "the 'appearance of impropriety' standard proposed by Sussel[.]" It concluded Mr. Miyagi did "not possess a personal bias or prejudice against Sussel or in favor of the named appellees[.]" Nevertheless, it "believe[d] . . . an appearance of impropriety exist[ed] as to [his] serving on the Commission" and "recommend[ed] that Commis-

sioner Miyagi seriously consider voluntarily recusing himself from hearing Sussel's appeal to avoid even the appearance of impropriety." The court thus enjoined only Commissioner Dias' participation in the civil service appeal.

Upon reviewing the record, we likewise believe Mr. Miyagi's participation in Mr. Sussel's appeal to the commission would create an appearance of impropriety. And since we see no reason why an administrative adjudicator should be allowed to sit with impunity in a case where the circumstances fairly give rise to an appearance of impropriety and reasonably cast suspicion on his impartiality, we conclude the circuit court erred in not enjoining Mr. Miyagi's participation therein.

We therefore strike the circuit court's conclusion that an administrative adjudicator is subject to disqualification only upon a showing of actual bias, vacate its interlocutory order, and remand the case for entry of an order consistent with this opinion and for further proceedings not inconsistent therewith.

*Charles K.Y. Khim* for appellant, cross–appellee.
   *Jonathan Chun (Alice Fent* with him on answering brief), Deputies Corporation Counsel, for appellees, cross–appellants.