**APOGA A. SIFAGALOA**, Appellant–Appellant, v. **BOARD OF TRUSTEES OF THE EMPLOYEES' RETIREMENT SYSTEM OF THE STATE OF HAWAII**, Appellee–Appellee

NO. 15551

(CIV. NO. 91–0076–01)

NOVEMBER 10, 1992

LUM, C.J., WAKATSUKI,* MOON, LEVINSON, JJ., AND INTERMEDIATE COURT OF APPEALS CHIEF JUDGE BURNS, IN PLACE OF KLEIN, J., RECUSED

---

*Associate Justice Wakatsuki, who heard oral argument, passed away on September 22, 1992. *See* HRS § 602–10 (1985).

## OPINION OF THE COURT BY LEVINSON, J.

The appellant Apoga Sifagaloa (Sifagaloa), a member of the Employees' Retirement System (ERS) of the State of Hawaii, *see generally* Hawaii Revised Statutes (HRS) ch. 88 (1985) and, in particular, HRS §§ 88–21 and 88–22 (1985),[1] appeals from a circuit court order that affirmed

---

[1] The Legislature established the "Employees' Retirement System" in 1925. Act 55, 1925 Haw. Sess. Laws 51–70. HRS § 88–21 (1985) defines "member" to mean "any person included in the membership of the [ERS]." The same section defines "employee" to include "any employee . . . of the State or any county. . . ." HRS § 88–22 (1985) provides in relevant part that "[t]here shall be a retirement system for the purpose of providing retirement allowances and other benefits for employees. It shall be known as the 'Employees' Retirement System of the State of Hawaii.' . . ."

the denial of his application for service–connected total disability retirement benefits under HRS § 88–77 (1985).[2]

Sifagaloa urges that his due process rights were violated because the Board of Trustees of the ERS (Trustees) were not unbiased adjudicators, based on their allegedly conflicting duty, as trustees, to preserve the ERS funds pursuant to HRS § 88–110 (1985).[3] We conclude that this contention is without merit. However, Sifagaloa also argues that the circuit court erroneously affirmed the Trustees' denial of his claim on the basis that there was no evidence of permanent incapacitation resulting from an accident occurring while performing his duties as a city truck driver. *See* HRS §§ 88–77(d) and 91–14 (1985).[4] We agree and conclude that the circuit court erred in affirm-

---

[2] HRS § 88–77 (1985) provides in relevant part:

(a) Upon application of a member, or of the head of the member's department, any member who has been permanently incapacitated as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place, or as the cumulative result of some occupational hazard, through no wilful negligence on the member's part, may be retired by the board of trustees for service–connected total disability provided that:

. . . .

(4) The medical board certifies that the member is incapacitated for gainful employment and that the member's incapacity is likely to be permanent.

This section was amended in 1987, after the accident and the filing of the claim in this case. *See* HRS § 88–77 (Supp. 1991). The effective date of the amendment was June 25, 1987. The amendment was technical and immaterial to the issues presented in the present appeal.

[3] HRS § 88–110 (1985) provides in relevant part that "[t]he board of trustees shall be trustees of the several funds of the system and may invest and reinvest such funds as authorized by this part and by law from time to time provided."

[4] HRS § 88–77(d) (1985) provides in relevant part:

ing the Trustees' decision. Accordingly, we reverse the circuit court's order and remand for entry of judgment in Sifagaloa's favor.

## I. **Background**

Sifagaloa was involved in a motor vehicle accident on December 7, 1981, while driving a truck within the scope of his employment with the City and County of Honolulu. On October 18, 1984, he filed a claim for service–connected total disability retirement benefits pursuant to HRS § 88–77.

On June 29, 1987, the Medical Board of the ERS submitted its decision to the Trustees on Sifagaloa's claim, finding that Sifagaloa was permanently incapacitated, due to psychological factors, both from further performance of his duties as a truck driver and from any other gainful employment. Nevertheless, the Medical Board recommended that Sifagaloa's claim be denied because it found that there was no causal connection between the

---

The board [of trustees] shall have the power to determine whether or not the disability is the result of an accident occurring while in the actual performance of duty at some definite time and place. . . . The board may accept as conclusive:

. . . .

(2)  A finding to this effect by the medical board.

HRS § 88–82 (1985) provides in relevant part:

**Appeal of decision of medical board.** A member who is not satisfied with the decision of the medical board may appeal the decision to the board of trustees. . . . The right of appeal to the board of trustees shall apply to all decisions and recommendations which the medical board is authorized to make.

The proceedings of the ERS with respect to determining service–connected disability retirement benefits are "contested cases" within the meaning of the Hawaii Administrative Procedure Act, HRS ch. 91 (1985). *See generally Mortensen v. Board of Trustees of Employees' Retirement Sys.*, 52 Haw. 212, 473 P.2d 866 (1970). As

motor vehicle accident and Sifagaloa's current *physical* impairment and, therefore, Sifagaloa's disability was "non–service connected." The Trustees accepted the Medical Board's finding and recommendation and denied Sifagaloa's claim. Sifagaloa timely appealed the Medical Board's decision to the Trustees pursuant to HRS § 88–82 (1985).

On May 5 and 17, 1988, the Trustees conducted hearings regarding Sifagaloa's appeal. Hearing officer Alfred Hee (Hee) heard testimony from Sifagaloa, several medical doctors, and a psychiatrist, Dr. Edward Furukawa, who was called as a witness by the Medical Board.[5]

On direct examination, Dr. Furukawa testified that Sifagaloa suffered from a psychiatrically recognized disorder styled "Psychological Factors Affecting Physical Condition." During cross–examination, Dr. Furukawa opined that the December 7, 1981 accident was the cause of Sifagaloa's condition and that the condition was psychologically disabling. Dr. Furukawa also testified that Sifagaloa was not a malingerer. On redirect examination, Dr. Furukawa testified that he would not be surprised if Sifagaloa's psychological condition persisted even if the claim were ultimately resolved in Sifagaloa's favor.

Despite Dr. Furukawa's uncontroverted testimony, Hee found that Sifagaloa had presented no psychiatric evidence establishing that his disability was caused by the

---

such, an aggrieved ERS member has a right to judicial review by the circuit court of a final decision and order of the ERS. *Id.* at 215, 473 P.2d at 869; *see also* HRS § 91–14 (1985).

[5] Hee also received evidence in the form of the reports of Sifagaloa's physicians, vocational rehabilitation counselors, and others who had provided services to him. None of the testimony and evidence received controverted Dr. Furukawa's conclusions.

December 7, 1981 accident. Hee recommended that the Medical Board's report be affirmed. In its final decision, issued on December 10, 1990, the Trustees affirmed Hee's recommendation in its entirety.

On appeal to the circuit court, Sifagaloa argued that his right to due process of law was violated because the Trustees were not impartial adjudicators and should not have been permitted to determine whether he should receive retirement benefits. Sifagaloa also contended that the Trustees erred when they determined that his disability was not service–connected. The circuit court determined that the Trustees' dual statutory functions of investing retirement funds and adjudicating disability retirement cases gave rise to no appearance of impropriety. Moreover, the circuit court found no objective evidence in the record from which a determination could be made that any of the Trustees should be disqualified. Finally, the circuit court ruled that the Trustees' decision to deny Sifagaloa total disability retirement was consistent with the evidence. Accordingly, the circuit court entered an order affirming the Trustees' denial of Sifagaloa's application.

## II. **Sifagaloa's Due Process Claim**

On appeal to this court, Sifagaloa argues that he was denied his constitutional right to due process of law, as guaranteed by the fourteenth amendment to the United States Constitution and article 1, section 5 of the Hawaii Constitution, because the Trustees have conflicting interests — awarding retirement benefits and preserving the financial integrity of the ERS fund. In effect, Sifagaloa urges that the Trustees' alleged conflict of interest gives rise to an appearance of impropriety on the basis of which their impartiality might reasonably be questioned;

accordingly, Sifagaloa concludes that the Trustees should have been disqualified from adjudicating his appeal of the Medical Board's decision.

This court has articulated the conceptual framework within which we begin our analysis of Sifagaloa's due process claim. In *Sussel v. City and County of Honolulu Civil Service Commission*, 71 Haw. 101, 784 P.2d 867 (1989), we declared the following propositions to which we continue to subscribe:

> "[T]here are certain fundamentals of just procedure which are the same for every type of tribunal and every type of proceeding." R. Pound, *Administrative Law* 75 (1942). "Concededly, a 'fair trial in a fair tribunal is a basic requirement of due process.' *In re Murchison*, 349 U.S. 133, 136[, 75 S. Ct. 623, 625, 99 L. Ed. 942] (1955). This applies to administrative agencies which adjudicate as well as to courts. *Gibson v. Berryhill*, 411 U.S. 564, 579[, 93 S. Ct. 1689, 1698, 36 L. Ed. 2d 488] (1973)." *Withrow v. Larkin*, 421 U.S. 35, 46–47[, 95 S. Ct. 1456, 1463–64, 43 L. Ed. 2d 712] (1975). Of course, "a biased decisionmaker [is] constitutionally unacceptable[.]" Id. at 47[, 95 S. Ct. at 1464]. But "no one would argue seriously that the disqualification of [decision–makers] on grounds of actual bias . . . prevents unfairness in all cases." *State v. Brown*, 70 Haw. 459, 467, 776 P.2d 1182, 1187 (1989). So "our system of [justice] has always endeavored to prevent even the probability of unfairness." *In re Murchison*, *supra*.
>
> The Supreme Court teaches us too that justice can "perform its high function in the best way [only if it satisfies] 'the appearance of justice.'

*Offutt v. United States*, 348 U.S. 11, 14[, 75 S. Ct. 11, 13]." *In re Murchison*, *supra*. For in a popular government, " 'justice must not only be done but must manifestly be seen to be done . . . .' *Rex v. Justices of Bodmin*, [1947] 1 K.B. 321, 325." *Joint Anti–Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 172 n.19[, 71 S. Ct. 624, 649 n.19, 95 L. Ed. 817] (Frankfurter, J. concurring) (1951). And,

> "[t]here can be little question that use of a truly independent adjudicator is essential to attainment of this goal. Indeed, if there exists any reasonable doubt about the adjudicator's impartiality at the outset of a case, provision of the most elaborate procedural safeguards will not avail to create [an] appearance of justice."

M. Redish & L. Marshall, *Adjudicatory Independence and the Values of Procedural Due Process*, 95 Yale L.J. 455, 483–84 (1986) . . . .

. . . .

> Since the fundamentals of just procedure impose a requirement of impartiality on "administrative agencies which adjudicate as well as [on] courts[,]" *Withrow v. Larkin*, 421 U.S. at 46[, 95 S. Ct. at 1463], we see no reason why an administrative adjudicator should be allowed to sit with impunity in a case where the circumstances fairly give rise to an appearance of impropriety and reasonably cast suspicion on his impartiality. *State v. Brown*, 70 Haw. at 467 n.3, 776 P.2d at 1188 n.3.

71 Haw. at 107–109, 784 P.2d at 870–71.

On the other hand, we have long held that: (1) legislative enactments are "presumptively constitutional;" (2) "a party challenging [a statutory scheme] has the burden of showing unconstitutionality beyond a reasonable doubt;" and (3) the constitutional defect must be "clear, manifest and unmistakable." *Blair v. Cayetano*, 73 Haw. 536, 542, 836 P.2d 1066, 1069 (1992); *Schwab v. Ariyoshi*, 58 Haw. 25, 31, 564 P.2d 135, 139 (1977); *see also Bishop v. Mahiko*, 35 Haw. 608 (1940).

The "very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895, 81 S. Ct. 1743, 1748, 6 L. Ed. 2d 1230 (1961); *Wolkenstein v. Reville*, 694 F.2d 35, 41 (2d Cir. 1982), *cert. denied*, 462 U.S. 1105, 103 S. Ct. 2452, 77 L. Ed. 2d 1332 (1983). "Whether a particular decision–making procedure is constitutionally defective for want of impartiality will depend on many factors. . . ." *Wolkenstein*, 694 F.2d at 41. These factors include: the character of the decision being made, *see Marshall v. Jerrico, Inc.*, 446 U.S. 238, 247–49, 100 S. Ct. 1610, 1615–16, 64 L. Ed. 2d 182 (1980); *Wolkenstein*, 694 F.2d at 41; the nature of the individual and governmental interests at stake, *see Hortonville Joint School District No. 1 v. Hortonville Educational Ass'n*, 426 U.S. 482, 491, 96 S. Ct. 2308, 2313, 49 L. Ed. 2d 1 (1976); *Wolkenstein*, 694 F.2d at 41; and the feasibility of alternative procedures. *Wolkenstein*, 694 F.2d at 41. An appearance of impropriety does not occur simply where there is a joinder of executive and judicial power. *Tumey v. Ohio*, 273 U.S. 510, 534, 47 S. Ct. 437, 445, 71 L. Ed. 749 (1927) (cited with approval in *Sussel*, 71 Haw. at 108, 784 P.2d at 870–71).

Administrators serving as adjudicators are presumed to be unbiased. *See, e.g.,* ***Schweiker v. McClure***, 456 U.S. 188, 195, 102 S. Ct. 1665, 1670, 72 L. Ed. 2d 1 (1982); ***Withrow v. Larkin***, 421 U.S. 35, 47, 95 S. Ct. 1456, 1464, 43 L. Ed. 2d 712 (1975); ***United States v. Morgan***, 313 U.S. 409, 421, 61 S. Ct. 999, 1004, 85 L. Ed. 1429 (1941). "The presumption can be rebutted by a showing of disqualifying interest, either pecuniary, *see* ***Gibson v. Berryhill***, 411 U.S. 564, 578–79, 93 S. Ct. 1689, 1697–98, 36 L. Ed. 2d 488 (1973), or institutional, *see* ***Ward*** [*v.* ***Village of Monroeville***, 409 U.S. 57, 93 S. Ct. 80, 34 L. Ed. 2d 267 (1972)], or both, *see* ***Tumey***, *supra.*" ***Wolkenstein***, 694 F.2d at 42. "But the burden of establishing a disqualifying interest rests on the party making the assertion." *Id.* (citing ***Schweiker***, 456 U.S. at 195, 102 S. Ct. at 1670).

Our review of the record persuades us that Sifagaloa has failed in the present case to establish a "disqualifying interest" on the part of the Trustees. The Trustees have no "direct, personal, [or] pecuniary interest" in their adjudications.[6] *See* ***Wolkenstein***, 694 F.2d at 42; *cf.* ***Tumey***, 273 U.S. at 519, 47 S. Ct. at 440 (village mayor derived salary directly contingent upon defendants' convictions of violations of state's prohibition act in "Liquor Court" over which mayor presided and therefore had direct, personal, and pecuniary interest in outcome of such adjudications). Neither does the record show that the Trustees have any interest other than "running a successful operation. . . . It

---

[6] Unlike the trustees of many private trusts, the ERS Trustees serve without compensation of any kind, although they do receive reimbursement from the ERS' expense fund "for all necessary expenses and for any loss of salary and wages they may suffer through serving. . . ." HRS § 88–26 (1985). Obviously, they are not motivated to preserve the ERS trust *res* in order to garner lucrative trusteeship fees.

cannot seriously be supposed that [they] would make unjustified determinations . . . to ingratiate [themselves]" with the ERS membership or the general public, the latter having no financial stake in the ERS and the potential award to Sifagaloa posing no conceivable threat to the former. *See* **Wolkenstein**, 694 F.2d at 42–43. Thus, Sifagaloa has simply failed to demonstrate that the Trustees' situation is "one which would offer a possible temptation to the average [person] as a judge." **Tumey**, 273 U.S. at 532, 47 S. Ct. at 444; **Ward**, 409 U.S. at 60, 93 S. Ct. at 83; **In re Murchison**, 349 U.S. 133, 136, 75 S. Ct. 623, 625, 99 L. Ed. 942 (1955).

Put succinctly, "[f]airly read, neither the facts . . . nor the generalized assertions made here about [the Trustees'] 'inconsistent' responsibilities prove an interest on [their] part in the outcome of the determinations made [on Sifagaloa's claim] sufficient . . . to overcome the 'presumption of honesty and integrity' that attaches by virtue of [their] office." **Wolkenstein**, 694 F.2d at 42; *see* **Withrow**, 421 U.S. at 47, 95 S. Ct. at 1461.[7] We therefore hold that Sifagaloa has failed to overcome the presumption of lack of bias by showing a disqualifying interest on the Trustees' part. That being the case, we further hold that Sifagaloa has failed to meet his burden of establishing beyond a reasonable doubt the existence of any constitutional defect in the adjudicatory mechanism created by HRS ch. 88 for determining members' ERS disability retirement benefits.

---

[7] We take judicial notice of the fact that both the circuit court judge who heard Sifagaloa's appeal from the Trustees' decision and the justices of this court are members of the ERS. Hawaii Rules of Evidence 201; *see* **In re Application of Pioneer Mill Co.**, 53 Haw. 496, 497 n.1, 497 P.2d 549, 551 n.1 (1972). Yet Sifagaloa does not question the impartiality of the circuit court or this court.

### III. Sifagaloa's Right to Service–Connected Total Disability ERS Benefits

Sifagaloa's second contention is that the circuit court erred in affirming the Trustees' denial of full service–connected disability retirement benefits. We reiterate that an administrative agency's factual findings are presumptively correct and cannot be set aside on appeal unless they are shown to be clearly erroneous in view of the reliable, probative, and substantial evidence[8] on the whole record. *Kaiser Foundation Health Plan, Inc. v. Department of Labor & Indus. Relations*, 70 Haw. 72, 81, 762 P.2d 796, 801 (1988); *Mahiai v. Suwa*, 69 Haw. 349, 358, 742 P.2d 359, 367 (1987); *see also Dedman v. Board of Land & Natural Resources*, 69 Haw. 255, 266, 740 P.2d 28, 35 (1987), *cert denied*, 485 U.S. 1020, 108 S. Ct. 1573, 99 L. Ed. 2d 888 (1988). A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction that a mistake has been committed. *Amfac, Inc. v. Waikiki Beachcomber Investment Co.*, 74 Haw. 85, 116, 839 P.2d 10, 27–28 (1992) (citations omitted). The "clearly erroneous" standard of review, however, is not applicable to an agency's conclusions of law, which are freely reviewable on appeal. *Kaiser Foundation Health Plan*, 70 Haw. at 81, 762 P.2d at 801.

The uncontroverted reliable, probative, and substantial testimonial evidence in this case leaves us with a definite and firm conviction that a mistake has been made.

---

[8] "Substantial evidence" is credible evidence of sufficient quantity and probative value to justify a reasonable person in reaching a conclusion that supports a finding of fact. *Amfac, Inc. v. Waikiki Beachcomber Investment Co.*, 74 Haw. 85, 116, 839 P.2d 10, 28 (1992) (citation omitted).

Accordingly, we hold that the Trustees erred in finding that although Sifagaloa is totally incapacitated from gainful employment, "such incapacity is non work related." It therefore follows that the circuit court erred in affirming the Trustees' decision.

HRS § 88–77 does not distinguish between physical and psychological disabilities. To qualify for service–connected total disability retirement, the statute only requires that a member of the ERS be "permanently incapacitated as the natural and proximate result of an accident occurring while in the performance" of some employment–related duty. The Medical Board found that Sifagaloa was permanently and totally incapacitated from further gainful employment of any kind. Nevertheless, the Medical Board determined that there was no causal connection between the accident and the disability.

Hee's report, which was accepted by the Trustees and the circuit court, stated that no evidence was "submitted" by Sifagaloa to establish that Sifagaloa's psychological condition was caused by the trauma of the December 7, 1981 accident. Hee is simply wrong. Dr. Furukawa, the Medical Board's own psychiatric expert witness, expressly testified that Sifagaloa was suffering from a recognized disorder — "Psychological Factors Affecting Physical Condition." He further opined that Sifagaloa was not a malingerer and that Sifagaloa's condition would persist even if a settlement were reached in the case. Most importantly, Dr. Furukawa unequivocally testified to the causal link between Sifagaloa's condition and the December 7, 1981 accident.[9] Dr. Furukawa's uncontroverted

---

[9] In responding to a question regarding the cause of Sifagaloa's illness, Dr. Furukawa stated that it was "obvious" that the accident had caused the condition.

testimony was the only psychiatric evidence "submitted" by either party.

We reverse the circuit court's order affirming the Trustees' decision and remand this case to the circuit court for entry of judgment in Sifagaloa's favor.

*Stephen K. Yamada* (*Glenn H. Uesugi* with him on the briefs) for appellant–appellant Apoga A. Sifagaloa.

*Celia L. Jacoby* (*Charleen M. Aina* with her on the brief), Deputy Attorneys General, for appellee–appellee Board of Trustees of the Employees' Retirement System of the State of Hawaii.