<span style="color:red">**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000092
18-JAN-2023
07:47 AM
Dkt. 80 SO**</span>

NO. CAAP-17-0000092

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


JOHN THATCHER, Plaintiff-Appellant,
v.
HAWAII STATE PUBLIC CHARTER SCHOOL COMMISSION;
THOMAS HUTTON, INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY AS EXECUTIVE DIRECTOR OF THE HAWAII STATE
PUBLIC CHARTER SCHOOL COMMISSION, Defendants-Appellees
and
DOE PERSONS 1-10; DOE PARTNERSHIPS 1-10;
DOE CORPORATIONS 1-10; ROE "NON-PROFIT"
CORPORATIONS 1-10; AND ROE GOVERNMENTAL
ENTITIES 1-10, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 15-1-1583)


SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Nakasone and McCullen, JJ.)

Plaintiff-Appellant John Thatcher (**Thatcher**), Director of Connections Public Charter School (**Connections**), appeals from the "Order Granting Defendants Hawaii State Public Charter School Commission's and Thomas Hutton's, Individually and in His Official Capacity as Executive Director of the Hawaii State Public Charter School Commission, Motion for Summary Judgment" (**Order Granting MSJ**), "Final Judgment," and "Notice of Entry of

Final Judgment," all entered on February 1, 2017, by the Circuit Court of the First Circuit (**Circuit Court**).[1]

Thatcher commenced a lawsuit against Defendants-Appellees Hawaii State Public Charter School Commission (**Commission**) and former Executive Director, Thomas Hutton (**Hutton**), for alleged violations of Hawaii Revised Statutes (**HRS**) chapter 92 (**Sunshine Law**).  The Commission and Hutton moved for and were granted summary judgment on the basis that there was an open meeting after which Connections requested a written decision and the Commission's issuance of that written decision was an adjudicatory function exempt from the Sunshine Law.[2]

On appeal Thatcher contends the Circuit Court: (1) "clearly erred" in finding that there was an open meeting, a decision was made in March 2015, Connections requested a written decision per the terms of the State Public Charter School Contract between the Commission and Connections (**Charter Contract**), and the individual Defendants were acting as Commission board members; and (2) was wrong as a matter of law to conclude that the issuance of the written decision was an adjudicatory function under the terms of the contract, not subject to open meeting requirements under HRS § 92-6(a)(2), and limited to Connections' specific request for a final decision.

This case concerns Connections' use of a Department of Education (**DOE**) form for enrollment in public schools as its

---

[1]  The Honorable Virginia L. Crandall presided.

[2]  See HRS § 92-6 (2012), providing, in part:

> **§92-6 Judicial branch, quasi-judicial boards and investigatory functions; applicability.** (a) This part shall not apply:
> ....
> (2)  To adjudicatory functions exercised by a board and governed by sections 91-8 and 91-9, or authorized by other sections of the Hawaii Revised Statutes.

(Emphases added.)

application form.  The Commission determined that the enrollment form included discriminatory questions inappropriate at the <u>application</u> stage that would violate Hawai'i law.[3]

For the reasons that follow, we resolve Thatcher's assertions of error and affirm.

**(1)** In his first assertion of error, Thatcher argues that the Circuit Court was "clearly erroneous" in finding (at the summary judgment hearing)[4] that:

(a) "There was an open meeting.  A decision was made in March.  After that open meeting, Connections requested a written decision pursuant to the terms of the contract."

(b) "the individual Defendants were acting as Board members[.]"

We first note that the clearly erroneous standard does not apply.  Rather, because we are reviewing the Circuit Court's summary judgment ruling in favor of the Commission and Hutton, we review *de novo* based on the applicable summary judgment standard. <u>Ralston v. Yim</u>, 129 Hawai'i 46, 55, 292 P.3d 1276, 1285 (2013) (citing <u>First Ins. Co. of Hawai'i v. A & B Props., Inc.</u>, 126 Hawai'i 406, 413, 271 P.3d 1165, 1172 (2012)).

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

_____

[3]  The Commission determined the questions in the DOE enrollment form were inappropriate at the application stage because they can be used to discriminate against applicants where, unlike DOE public schools, public charter schools are not required to accept all students that apply.

[4]  Contrary to Thatcher's characterization of the Circuit Court's actions, the Circuit Court did not issue findings of fact.  Instead, after argument by the parties, the Circuit Court verbally granted the Commission's motion for summary judgment, stating at the hearing:

> . . . For the reasons just stated by Mr. Kuwabe, the Court grants the motion.
> There was an open meeting. A decision was made in March. After that open meeting, Connections requested a written decision pursuant to the terms of the contract. The issuance of that written decision was an adjudicatory function. It was pursuant to the terms of the contract. It is not subject to the open meetings pursuant to 92-6(a)(2). It's an adjudicatory function exercised by the board and it was a decision limited to the specific application being made by Connections.

> moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and inferences drawn therefrom in the light most favorable to the party opposing the motion.

Id. at 55-56, 292 P.3d at 1285-86 (citation and brackets omitted).

Further, the following burden-shifting paradigm applies:

> The burden is on the party moving for summary judgment (moving party) to show the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitles the moving party to judgment as a matter of law. This burden has two components.
>
> First, the moving party has the burden of producing support for its claim that: (1) no genuine issue of material fact exists with respect to the essential elements of the claim or defense which the motion seeks to establish or which the motion questions; and (2) based on the undisputed facts, it is entitled to summary judgment as a matter of law. Only when the moving party satisfies its initial burden of production does the burden shift to the nonmoving party to respond to the motion for summary judgment and demonstrate specific facts, as opposed to general allegations, that present a genuine issue worthy of trial.
>
> Second, the moving party bears the ultimate burden of persuasion. This burden always remains with the moving party and requires the moving party to convince the court that no genuine issue of material fact exists and that the moving party is entitled to summary judgment as a matter of law.

Id. at 56-57, 292 P.3d at 1286-87 (quoting French v. Hawaii Pizza Hut, Inc., 105 Hawaiʻi 462, 470, 99 P.3d 1046, 1054 (2004)).

**(a)** The crux of Thatcher's first argument is that the Circuit Court overextended the application of the Sunshine Law's exemption for adjudicatory functions, and that the Commission and Hutton instead engaged in unlawful rulemaking that was contrary to the spirit of the Sunshine Law.

The Sunshine Law is based on a policy

> "that the formation and conduct of public policy—the discussions, deliberations, decisions, and action of governmental agencies—shall be conducted as openly as possible."  HRS § 92-1.  The Sunshine Law implements this policy by establishing the presumption that all government board meetings will be open to the public. See HRS § 92-3 ("Every meeting of all boards shall be

4

> open to the public and all persons shall be permitted
> to attend any meeting unless otherwise provided in the
> constitution or as closed pursuant to sections 92-4
> and 92-5.").

Civ. Beat L. Ctr. for the Pub. Int., Inc. v. City and Cnty. of Honolulu, 144 Hawaiʻi 466, 476, 445 P.3d 47, 57 (2019). The Sunshine Law reflects the Legislature's concern with balancing public access to board meetings and the board's continued ability to effectively conduct its business. H. Stand. Comm. Rep. No. 889, in 1985 House Journal, at 1424.

As noted above, HRS § 92-6 provides that a board is exempt from the Sunshine Law when exercising its adjudicatory functions pursuant to sections of HRS chapter 91 or as authorized by other Hawaiʻi statutes. Under HRS § 302D-5 (Supp. 2014),[5] which governs public charter schools, the Commission is responsible for, among other things, "[m]onitoring, in accordance with charter contract terms, the performance and legal compliance

---

[5] HRS § 302D-5 provides, in relevant part:

**§302D-5 Authorizer powers, duties, and liabilities.**
(a) Authorizers are responsible for executing the following essential powers and duties:
    (1)   Soliciting and evaluating charter applications;
    (2)   Approving quality charter applications that meet identified educational needs and promote a diversity of educational choices;
    (3)   Declining to approve weak or inadequate charter applications;
    (4)   Negotiating and executing sound charter contracts with each approved charter applicant and with existing public charter schools;
    (5)   <u>Monitoring, in accordance with charter contract terms, the performance and legal compliance of public charter schools</u>; and
    (6)   <u>Determining whether each charter contract merits renewal, nonrenewal, or revocation.</u>
    (b)   An authorizer shall:
    ....
    (2)   <u>Be responsible for and ensure the compliance of a public charter school it authorizes with all applicable state and federal laws, including reporting requirements;</u>
    ....
    (c)   An authorizer shall have the power to make and execute contracts and all other instruments necessary or convenient for the exercise of its duties and functions under this chapter.

(Emphases added.)

of public charter schools[,]" and "[d]etermining whether each charter contract merits renewal, nonrenewal, or revocation[,]" and shall "[b]e responsible for and ensure the compliance of a public charter school it authorizes with all applicable state and federal laws[.]"  In turn, pursuant to the applicable Charter Contract, Connections "shall comply with its admission policies and procedures as approved by the Commission."

Under the Charter Contract, Connections is also obligated to:

> make all student recruitment, admissions, enrollment, and retention decisions in a nondiscriminatory manner and without regard to race, color, ethnicity, national origin, religion, sex, sexual orientation, marital status, income level, academic or athletic ability, disability, need for special education services, or lack of proficiency in the English language.

Here, although Thatcher disputes that there was an open meeting, the Commission and Hutton submitted evidence establishing an open meeting and Thatcher failed to submit contrary evidence.  In support of the motion for summary judgment (**MSJ**), Hutton submitted a declaration attaching the Notice of Meeting for the open meeting on February 26, 2015 (**February Meeting**) held by the Commission's Performance and Accountability Committee (**Committee**).  He also submitted minutes from the February Meeting during which the Committee discussed and conditionally approved Connections' admissions policy upon modification of the DOE SIS-10W, the DOE enrollment form at issue in this case.  Hutton's declaration also attached a General Business Meeting Notice of Meeting for the March 12, 2015 open meeting (**March Meeting**) held by the Commission, a Recommendation Sheet from Hutton to the Commission recommending conditional approval of Connections' admissions policy, "provided the school uses a modified version of the DOE Enrollment form as its application form[,]" and minutes from the March Meeting noting that the Commission had unanimously passed the recommendation from the February Meeting and the Recommendation Sheet. Consequently, for purposes of admissions, Connections was

6

required to remove from the DOE SIS-10W enrollment form questions regarding McKinney-Vento eligibility,[6] ethnicity, gender, and language spoken by an applicant.

The uncontested evidence further establishes that after the open meeting in March 2015, Thatcher requested a final decision on the use of the DOE enrollment form, pursuant to the Charter Contract.  Hutton's declaration attached a letter from Thatcher to Hutton, dated March 13, 2015, the day after the Commission conditionally approved Connections' admissions policy, which stated:

> Pursuant to section 14.7 of our Contract, Connections PCS claims that a dispute between the Commission and Connections PCS has arisen under and by virtue of this Contract. It has not been resolved by mutual agreement. <u>Connections PCS is officially requesting a final decision concerning our use of the DOE enrollment form with a no discrimination disclaimer within 90 calendar days as provided for in Section 14.5 of the Contract.</u>

(Emphasis added.)  Hutton's declaration also attached a subsequent letter dated April 6, 2015, from Thatcher to the Commission, again requesting a final decision pursuant to section 14.5 of the Charter Contract.  Section 14.5 provides, in pertinent part:

> Any disputes between the Commission and the School which arise under, or are by virtue of, this Contract and which are not resolved by mutual agreement, shall be decided by the full Commission in writing, within 90 calendar days after a written request by the School for a final decision concerning the dispute[.]

Hutton also submitted a letter he wrote informing Thatcher that although the Commission would not be placing the matter on the agenda for another public meeting, prior to issuing a written decision, the Commission would give Thatcher an opportunity to submit a further written statement no later than May 11, 2015.

---

[6] The purpose of the McKinney-Vento Homeless Assistance Act of 1987, reauthorized in 2002 as part of the No Child Left Behind Act, is to "ensure that each child of a homeless individual and each homeless youth has equal access to the same free, appropriate public education, including a public preschool education, as provided to other children and youths."  <u>Nat'l L. Ctr. on Homelessness & Poverty, R.I. v. New York</u>, 224 F.R.D. 314, 318 (E.D. N.Y. 2004) (quoting 42 U.S.C. § 11431 (2004)).

Thatcher responded with a letter to the Commission stating his concern that the matter should be placed on a Commission agenda for another public meeting.

Catherine Payne (**Payne**), chairperson of the Commission, submitted a declaration attached to the MSJ, which stated that on May 14, 2015, the Commission, during a closed mid-day break from its general meeting, reviewed Thatcher's request for a final decision.[7]  The Commission issued the Final Written Decision the following day, which "affirm[ed] in writing its decision of March 12, 2015, conditionally approving Connections' admissions policy and practices, provided that the school agree to use as its application form a modified version of the DOE [SIS-10W] enrollment form."[8]

Given the uncontested evidence, there is no genuine issue of material fact that there was an open meeting, a decision was made in March 2015, and Thatcher requested a Final Written Decision pursuant to the Charter Contract.  Thus, the Circuit Court did not err in this regard.

**(b)**  Thatcher also contends that the Circuit Court was clearly erroneous "in finding that the individual

---

[7]  In particular, Payne stated that the Commission reviewed the following in its closed meeting:

> The Commission's prior deliberations on Connections' application form;
> The submittals, *i.e.*, the Recommendation Sheets for the meetings of both the full Commission and the Committee on Performance and Accountability;
> The correspondence between Mr. Thatcher and the Commission on Connections' application form; and
> The Commission's prior consultation with its Deputy Attorney General regarding Connections' application form.

[8]  Thatcher also asserts that the Commission intentionally violated the Sunshine Law by "already [making] a decision, in private email communications [that occurred prior to the Final Written Decision]."  Thatcher appears to argue that these communications should have occurred publicly pursuant to the "public notice and testimony requirements of [HRS] Chapters 91 and 92[.]"  However, the email correspondence Thatcher references occurred prior to the Final Written Decision and was pertinent to addressing Thatcher's request for a final decision.  Given our conclusion *infra* that the Circuit Court properly determined the Commission's decision was an adjudicatory function, this argument is without merit.

Defendants were acting as Board members[.]"[9]  Thatcher fails to clearly cite where in the record this alleged error occurred or present a clear argument.  However, we address his contention to the extent we can discern it.  See Marvin v. Pflueger, 127 Hawaiʻi 490, 496, 280 P.3d 88, 94 (2012).  At best, it appears Thatcher is referring to the Circuit Court's conclusion at the summary judgment hearing that "the board" exercised its adjudicatory function when it made its decision regarding Connections' application form.  We interpret Thatcher's point of error as an attempt to discredit the Commissioners' status as board members to invalidate the Final Written Decision.  However, the only individual defendant named in this case is Hutton, who is the former Executive Director of the Commission, not a Commissioner.  Therefore, this argument is without merit.

**(2)**  In his second point of error, Thatcher contends the Circuit Court was wrong as a matter of law to conclude at the summary judgment hearing that:

> [t]he issuance of that written decision was an adjudicatory function.  It was pursuant to the terms of the contract.  It is not subject to the open meetings pursuant to 92-6(a)(2).  It's an adjudicatory function exercised by the board and it was a decision limited to the specific application being made by Connections.

As noted above, we will review the Circuit Court's summary judgment ruling *de novo*.

Thatcher asserts that the Commission and Hutton engaged in unlawful rulemaking without a public hearing pursuant to HRS chapter 91, the Hawaiʻi Administrative Procedures Act.  We thus address whether the Commission's issuance of the Final Written Decision was rulemaking or adjudication.

"Hawaiʻi appellate courts have typically discussed the meaning of the general definition of 'rule' in cases where there is a question of whether the agency action is legislative or

---

[9]  As noted above, the Circuit Court did not issue findings of fact.

adjudicative."  <u>Green Party of Hawaii v. Nago</u>, 138 Hawaiʻi 228, 237-38, 378 P.3d 944, 953-54 (2016) (citations omitted).

> Rulemaking is the process by which an agency lays down new prescriptions to govern the future conduct of those subject to its authority; <u>adjudication is the process by which the agency applies either law or policy, or both, to the facts of a particular case.</u> Rulemaking is essentially legislative in nature, not only because it operates in the future, but also because it is concerned largely with considerations of policy.  Adjudication, conversely, is concerned with the determination of past and present rights and liabilities.  Typically, there is involved a determination as to whether past conduct was unlawful, so that the proceeding is characterized by an accusatory flavor and may result in disciplinary action.

<u>Shoreline Transp., Inc. v. Robert's Tours and Transp., Inc.</u>, 70 Haw. 585, 591, 779 P.2d 868, 872 (1989) (emphasis added) (citations and internal quotation marks omitted) (format altered).

We agree with the Circuit Court's determination that the Commission's issuance of the Final Written Decision was an adjudication, not rulemaking, and is thus exempt from the Sunshine Law.  First, Thatcher framed his disagreement with the Commission's decision as a "dispute" between the Commission and Connections that arose under the Charter Contract, evidenced by the letter he wrote to the Commission requesting a final decision pursuant to section 14.5 of the Charter Contract.  Thatcher reiterated this point in his letter to the Office of Information Practices, which he attached to his declaration in opposition to the MSJ.  This discredits Thatcher's argument that the Commission's Final Written Decision embodied a policy change.  Second, the Commission's Final Written Decision addressed Connections' specific use of the DOE SIS-10W enrollment form in its <u>application</u> process, as the Commission is responsible for ensuring that all charter schools comply with state and federal laws.[10]  HRS § 302D-5.  Third, Connections' failure to comply

_____

[10]  The Final Written Decision expressly noted that Connections could obtain "[t]he desired information . . . during the <u>post-admission enrollment phase.</u>" (Emphasis added.)

with the Commission's directive in the Final Written Decision would render Connections in violation of the Charter Contract, and subject to disciplinary action.

In issuing the Final Written Decision, the Commission essentially applied law or policy, or both, to the facts of this particular case, which is an adjudicative function. Shoreline Transp., 70 Haw. at 591, 779 P.2d at 872.  Furthermore, the Performance and Accountability Committee, through the Recommendation Sheet, advised that Connections' failure to modify the DOE SIS-10W enrollment form would subject the school to disciplinary action pursuant to the Charter Contract.  See id. ("Typically, there is involved a determination [in adjudication] as to whether past conduct was unlawful, so that the proceeding is characterized by an accusatory flavor and may result in disciplinary action.") (citation omitted).  The circumstances which led to the Commission's Final Written Decision clearly reflect that the Commission was exercising its adjudicatory function regarding Connections' use of the DOE SIS-10W enrollment form in its application process.  Therefore, we conclude that the Circuit Court did not err in determining that the Commission's Final Written Decision constituted an adjudicatory function exempt from the Sunshine Law.

Finally, the record does not support Thatcher's contention that the Circuit Court ignored the Commission's alleged bias against him.  "Administrators serving as adjudicators are presumed to be unbiased.  The presumption can be rebutted by a showing of disqualifying interest, either pecuniary or both[.]  But the burden of establishing a disqualifying interest rests on the party making the assertion."  Sifagaloa v. Bd. of Trs. of Emps'. Ret. Sys. of State of Hawaii, 74 Haw. 181, 192, 840 P.2d 367, 372 (1992) (citations and internal quotation marks omitted) (format altered).  Thatcher asserts that the Commissioners' comments in email correspondence, which were attached to his declaration, evidenced a lack of impartiality, for example: "Wow so much work for one problem child[;]" "Talked

to Mitch about some of our fun.  He may be enough to take care of Thatcher all by himself[;]" and Hutton characterized Thatcher's email as "fan mail."  In our view, these comments — though sarcastic and unnecessary — do not evidence a disqualifying interest, or a "direct, personal, pecuniary interest" in the Commissioners' decision.  Id. at 192, 840 P.2d at 372 (citation omitted).  Moreover, the Final Written Decision does not reflect a failure to be impartial or unbiased towards Thatcher.  Thus, Thatcher fails to overcome the presumption that the Commissioners were not biased.

Therefore, IT IS HEREBY ORDERED that the "Order Granting Defendants Hawaii State Public Charter School Commission's and Thomas Hutton's, Individually and in His Official Capacity as Executive Director of the Hawaii State Public Charter School Commission, Motion for Summary Judgment," the "Final Judgment," and "Notice of Entry of Final Judgment," entered on February 1, 2017, by the Circuit Court of the First Circuit, are affirmed.

DATED:  Honolulu, Hawaiʻi, January 18, 2023.


On the briefs:                    /s/ Lisa M. Ginoza
                                  Chief Judge
Ted H.S. Hong,
for Plaintiff-Appellant           /s/ Karen T. Nakasone
                                  Associate Judge
Kunio Kuwabe,
Holly T. Shikada,                 /s/ Sonja M.P. McCullen
Deputy Attorneys General,         Associate Judge
for Defendants-Appellees