378 P.3d 1014

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Dat Minh TRAN, Defendant–Appellant.**

**No. CAAP–13–0005233.**

Intermediate Court of Appeals of Hawai'i.

July 14, 2016.

As Corrected Sept. 9, 2016.

the Agency, i.e., the Police Chief. KCC § 2–3.3    ex. A.

Cynthia A. Kagiwada, on the briefs, for Petitioner–Appellant.

Stephen K. Tsushima, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for Plaintiff–Appellee.

NAKAMURA, C.J., and FOLEY and LEONARD, JJ.

Opinion of the Court by NAKAMURA, C.J.

In 1997, Defendant–Appellant Dat Minh Tran (Tran) was sentenced to life imprisonment without the possibility of parole after he was convicted of attempted first-degree murder. Tran was seventeen years old, and thus a juvenile, when he committed the offense, but the family court waived jurisdiction and he was prosecuted as an adult. When he was sentenced in 1997, Tran received the mandatory sentence applicable to his offense under Hawaii Revised Statutes (HRS) § 706–656(1) (1993), which then provided: "Persons convicted of first degree murder or first degree attempted murder shall be sentenced to life imprisonment without possibility of parole."

After Tran's conviction and sentence were affirmed on direct appeal and became final, the United States Supreme Court issued three decisions concerning juveniles under the Eighth Amendment's prohibition against "cruel and unusual punishments." These decisions established limitations on the imposition of the most severe penalties—the death penalty and life without the possibility of parole—on juvenile offenders. In *Roper v. Simmons*, 543 U.S. 551, 578, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), the Court held that the death penalty could not be imposed on offenders who were juveniles (under the age of eighteen) when their crimes were committed. In *Graham v. Florida*, 560 U.S. 48, 74–75, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), the Court held that a juvenile offender could not be sentenced to life without the possibility of parole for a nonhomicide crime. Finally, in *Miller v. Alabama*, —— U.S. ——, 132 S.Ct. 2455, 2469, 183 L.Ed.2d 407 (2012), the Court held that a sentencing scheme that mandates a sentence of life without the possibility of parole for juvenile offenders (even those who commit a homicide) violates the Eighth Amendment.

In the wake of these decisions, Tran filed a Petition for Post–Conviction Relief. The Circuit Court of the First Circuit (Circuit Court)[1] granted the Petition and set aside Tran's sentence of life without the possibility of parole. The Circuit Court subsequently resentenced Tran to life with the possibility of parole.

After Tran was resentenced and his opening brief was filed, the 2014 Hawaiʻi Legislature enacted Act 202 "to abolish life imprisonment without the possibility of parole as a sentencing option for those convicted for offenses committed while under the age of eighteen." 2014 Haw. Sess. Laws Act 202 (Act 202), § 1 at 694. Act 202 amended HRS § 706–656(1) so that it now provides: "Persons under the age of eighteen years at the time of the offense who are convicted of first degree murder or first degree attempted murder shall be sentenced to life imprisonment with the possibility of parole." 2014 Haw. Sess. Laws Act 202, § 2 at 694. Act 202 applies to "proceedings arising on or after its effective date [ (July 2, 2014) ] and to proceedings that were begun but not concluded before its effective date." 2014 Haw. Sess. Laws Act 202, § 6 at 695 (emphasis added).

Tran appeals from the Amended Judgment which resentenced him to life imprisonment with the possibility of parole on his conviction for attempted first-degree murder. On appeal, Tran argues that: (1) the Circuit Court erred in severing and reforming HRS § 706–656 (in response to *Miller*, *Graham*, and *Roper* and before it was amended by Act 202) to require the imposition of a sentence of life imprisonment with the possibility of parole; and (2) the Circuit Court abused its discretion in failing to consider the mitigating factors of youth in resentencing him. Tran also argues that the 2014 amendment to HRS § 706–656(1) by Act 202 to require a

sentence of life imprisonment with the possibility of parole for juvenile offenders is unconstitutional because it fails to provide for individualized sentencing and consideration of the mitigating factors of youth.

As explained in greater detail below, we conclude that the Legislature's 2014 amendment of HRS § 706–656(1) effectively eliminates the need to address Tran's severability arguments. We reject Tran's claim that the Circuit Court's sentence of life imprisonment with the possibility of parole and the amended HRS § 706–656(1) are unconstitutional. We therefore affirm Tran's sentence.

## BACKGROUND

Tran's conviction stemmed from an incident that occurred on October 7, 1995. A dispute arose between individuals in a red truck and a group consisting of Tran and his friends, who were in two cars. A chase through Waikiki involving the red truck and the two cars ensued. Tran was a passenger in one of the cars. During the chase, Tran stood up in the car with a gun, stuck his head and hand out the open sunroof, and fired at least two shots at the red truck. One shot went through the truck's front windshield, rear view mirror, and rear windshield and struck a passenger riding in the bed of the truck in the right armpit area. Although the passenger was injured, he did not die from the gunshot wound. A second shot, which did not strike anyone, went through the truck's grill and radiator and was found on the passenger side by the door.

Tran was seventeen years old at the time of the alleged offense. The family court waived jurisdiction and Tran was prosecuted as an adult. Tran was charged with attempted murder in the first degree, in violation of HRS § 707–701(1)(a) (1993) and HRS § 705–500 (1993) (Count 1);[2] attempted murder in

---

1. The Honorable Richard K. Perkins presided.

2. At the time of the alleged offense, as it does now, HRS § 707–701(1)(a) provided:
   (1) A person commits the offense of murder in the first degree if the person intentionally or knowingly causes the death of:
   (a) More than one person in the same or separate incident[.]

At the time of the alleged offense, as it does now, HRS § 705–500 provided:
   (1) A person is guilty of an attempt to commit a crime if the person:
   (a) Intentionally engages in conduct which would constitute the crime if the attendant circumstances were as the person believes them to be; or

the second degree with respect to each of the three individuals in the red truck, in violation of HRS § 707–701.5(1) (1993) and HRS § 705–500 (Counts 2, 3, and 4); and place to keep loaded firearm, in violation of HRS § 134–6(c) and (e) (Supp.1995) (Count 5).

The jury found Tran guilty as charged on Counts 1 and 5. On October 14, 1997, the Circuit Court sentenced Tran to life imprisonment without the possibility of parole on Count 1, which was the mandatory sentence then in effect for anyone convicted of attempted first-degree murder. The Circuit Court sentenced Tran to a concurrent term of ten years of imprisonment on Count 5, with a mandatory minimum term of ten years.

Tran filed a direct appeal of his Judgment of conviction and sentence. On October 6, 1998, the Hawaiʻi Supreme Court issued a summary disposition order affirming Tran's Judgment. Tran filed petitions for post-conviction relief in 2000, 2003, and 2005, which were all denied.

On December 14, 2012, after the United States Supreme Court's decision in *Miller*, Tran filed his fourth petition for post-conviction relief. On July 31, 2013, the Circuit Court granted the petition. On August 2, 2013, the Circuit Court issued an order setting aside Tran's sentence of life imprisonment without the possibility of parole on Count 1 and scheduling the case for resentencing on that count.

On October 16, 2013, after hearing arguments from the parties, the Circuit Court resentenced Tran on Count 1 to life imprisonment with the possibility of parole. The Circuit Court concluded that pursuant to

(b) Intentionally engages in conduct which, under the circumstances as the person believes them to be, constitutes a substantial step in a course of conduct intended to culminate in the person's commission of the crime.
(2) When causing a particular result is an element of the crime, a person is guilty of an attempt to commit the crime if, acting with the state of mind required to establish liability with respect to the attendant circumstances specified in the definition of the crime, the person intentionally engages in conduct which is a substantial step in a course of conduct intended or known to cause such a result.

*Graham*, which precluded juvenile offenders from being sentenced to life without parole for nonhomicide crimes, Tran could not be sentenced to life without parole. The Circuit Court also construed *Miller* to mean that as applied to a juvenile, the portion of HRS § 706–656 which mandated the imposition of a sentence of life without parole was unconstitutional. The Circuit Court concluded that after excising the unconstitutional portion of HRS § 706–656, what was left and what came closest to the legislature's intent as far as HRS § 706–656 was concerned was a sentence of life imprisonment with the possibility of parole. The Circuit Court ruled that it could not "go below" a sentence of life with the possibility of parole and imposed that sentence on Tran.

The Circuit Court filed its Amended Judgment on October 16, 2013, which sentenced Tran to life imprisonment with the possibility of parole on Count 1 and reimposed the concurrent ten-year term of imprisonment it previously imposed on Count 5.[3] This appeal followed.

## DISCUSSION

### I.

When Tran was originally sentenced in 1997, he received the sentence of life imprisonment without the possibility of parole that was mandated by HRS § 706–656(1) (1993) for his attempted first-degree murder conviction. At the time Tran committed this offense, HRS § 706–656(1) (1993) provided: "Persons convicted of first degree murder or first degree attempted murder shall be sentenced to life imprisonment without possibility of parole."

(3) Conduct shall not be considered a substantial step under this section unless it is strongly corroborative of the defendant's criminal intent.
In addition, HRS § 705–502 (1993) provided at the time of the alleged offense, as it does now, that "[a]n attempt to commit a crime is an offense of the same class and grade as the most serious offense which is attempted."

**3.** Tran had already served his sentence on Count 5 by the time his Amended Judgment was filed, and Count 5 is not at issue in this appeal.

Tran's resentencing and the subsequent amendment to HRS § 706-656(1) was prompted by a trilogy of decisions by the United States Supreme Court, *Roper, Graham,* and *Miller,* which applied the Eighth Amendment's prohibition against cruel and unusual punishment in cases involving juvenile offenders sentenced to death and life without the possibility of a parole. These cases provide the backdrop for Tran's challenge to the Circuit Court's resentencing him to life with the possibility of parole, and we begin with a discussion of the three cases.

## A.

■ In *Roper,* the Court held that the Eighth Amendment forbids the imposition of the death penalty on offenders who committed their crimes when they were under the age of eighteen. *Roper,* 543 U.S. at 578, 125 S.Ct. 1183.[4] The Court noted that "[b]ecause the death penalty is the most severe punishment, the Eighth Amendment applies to it with special force." *Id.* at 568, 125 S.Ct. 1183. The Court concluded that the differences between juveniles and adults "demonstrate that juvenile offenders cannot with reliability be classified among the worst offenders[,]" and that in light of the diminished culpability of juveniles, there was no adequate penological justification for imposing the death penalty on juvenile offenders. *Id.* at 569–73, 125 S.Ct. 1183.

## B.

In *Graham,* the Court held that the Eighth Amendment prohibits a life without parole sentence for a juvenile offender who did not commit homicide. *Graham,* 560 U.S. at 74–75, 130 S.Ct. 2011. In support of its decision, the Court stated that:

> *Roper* established that because juveniles have lessened culpability they are less deserving of the most severe punishments. As compared to adults, juveniles have a " 'lack of maturity and an underdeveloped sense of responsibility' "; they "are more vulnerable or susceptible to negative influences and outside pressures, including

peer pressure"; and their characters are "not as well formed."

*Id.* at 68, 130 S.Ct. 2011 (citations omitted). The Court noted that "life without parole is 'the second most severe penalty permitted by law' " and that "life without parole sentences share some characteristics with death sentences that are shared by no other sentences[,]" in that a sentence of life without parole "alters the offender's life by a forfeiture that is irrevocable" and "deprives the convict of the most basic liberties without giving hope of restoration[.]" *Id.* at 69–70, 130 S.Ct. 2011 (citations omitted). "Life without parole is an especially harsh punishment for a juvenile[,]" who will on average serve more time and a greater percentage of his or her life in prison than an adult. *Id.* at 70, 130 S.Ct. 2011. The Court concluded that none of the justifications for penal sanctions—retribution, deterrence, incapacitation, and rehabilitation—provides an adequate justification for the imposition of life without parole for juvenile nonhomicide offenders. *Id.* at 71–74, 130 S.Ct. 2011.

The Court explained that:

> A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give [such a defendant] some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.... The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life. It does prohibit States from making the judgment at the outset that those offenders never will be fit to reenter society.

*Id.* at 75, 130 S.Ct. 2011. The Court summarized its holding by stating: "A State need not guarantee the [juvenile nonhomicide] offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term." *Id.* at 82, 130 S.Ct. 2011.

---

4. The Eighth Amendment's prohibition against cruel and unusual punishment is applicable to

the States through the Fourteenth Amendment. *Roper,* 543 U.S. at 560, 125 S.Ct. 1183.

## C.

In *Miller*, the Court held that a sentencing scheme that imposes a mandatory sentence of life without parole on those under the age of eighteen at the time of their crimes violates the Eighth Amendment's prohibition against "cruel and unusual punishments," even when the crime committed was a homicide. *Miller*, 132 S.Ct. at 2460, 2469. The Court relied upon two strands of precedent. The first strand, exemplified by *Roper* and *Graham*, imposed "categorical bans on sentencing practices based on mismatches between the culpability of a class of offenders and the severity of a penalty." *Id.* at 2463. The Court stated that "*Roper* and *Graham* establish that children are constitutionally different from adults for purposes of sentencing. Because juveniles have diminished culpability and greater prospects for reform ... 'they are less deserving of the most severe punishments.'" *Id.* at 2464 (citation omitted).

The Court stated that the second strand of precedent, which demanded individualized sentencing when imposing the death penalty, was made relevant by *Graham*'s treatment of life imprisonment without parole as akin to the death penalty. *Id.* at 2467. *Graham* noted that life without parole and the death penalty share characteristics that are shared by no other sentences and that life without parole is especially harsh on juveniles who will almost inevitably spend more time in jail than adults. *Id.* at 2466 (citing *Graham*, 560 U.S. at 69–70, 130 S.Ct. 2011). The Court in death penalty cases requires that "capital defendants have an opportunity to advance, and the judge or jury a chance to assess, any mitigating factors, so that the death penalty is reserved only for the most culpable defendants committing the most serious offenses." *Id.* at 2467. The Court concluded that a similar rule, permitting the sentencer to consider the mitigating factors associated with juvenile offenders who have committed homicides, "should apply when a juvenile confronts a sentence of life (and death) in prison." *Id.* at 2467–2468.

Applying the two strands of precedent, the Court held that:

*Graham*, *Roper*, and our individualized sentencing decisions make clear that a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles. By requiring that all children convicted of homicide receive lifetime incarceration without possibility of parole, regardless of their age and age-related characteristics and the nature of their crimes, the mandatory sentencing schemes before us violate this principle of proportionality, and so the Eighth Amendment's ban on cruel and unusual punishment.

*Id.* at 2475. The Court declined to impose a categorical bar on a sentence of life without parole for juvenile homicide offenders, but noted that "appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon." *Id.* at 2469. Although declining to foreclose a sentencer's ability to impose life without parole on juvenile offenders in homicide cases, the Court required the sentencer in such cases to "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.*

## II.

The Circuit Court resentenced Tran after *Roper*, *Graham*, and *Miller* had been decided, but before the Legislature amended HRS § 706–656(1) to change the mandatory sentence for juvenile offenders convicted of first-degree murder and attempted first-degree murder from life without the possibility of parole to life with the possibility of parole. Thus, the Circuit Court was faced with having to resentence Tran under a statute that the United States Supreme Court had determined was unconstitutional as applied to juvenile offenders like Tran, without the benefit of specific guidance from the Legislature on how it would address the Supreme Court's rulings.

The following rules apply when a statutory provision has been found unconstitutional.

When a court determines that a provision of a law is unconstitutional, prior to invalidating the entirety of the law, the

court must first start "with a presumption that the [unconstitutional] enactment is severable from the remainder of the section or act." *Hamad v. Gates,* 732 F.3d 990, 1000–01 (9th Cir.2013) cert. denied, —— U.S. ——, 134 S.Ct. 2866, 189 L.Ed.2d 810 (2014). As a general rule, courts are to refrain from invalidating more of a statute than is necessary, because "a ruling of unconstitutionality frustrates the intent of the elected representatives of the people." *Ayotte v. Planned Parenthood of N. New England,* 546 U.S. 320, 329, 126 S.Ct. 961, 163 L.Ed.2d 812 (2006).

*Ruggles v. Yagong,* 135 Hawai'i 411, 431, 353 P.3d 953, 973 (2015) (brackets omitted). The presumption of severability

> is overcome only if something "in the statute's text or historical context makes it 'evident' that: [the Legislature], faced with the limitations imposed by the Constitution, would have preferred" no statute at all to a statute with the invalid part excised. *Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.,* 561 U.S. 477, 130 S.Ct. 3138, 3162, 177 L.Ed.2d 706 (2010) (quoting *Alaska Airlines,* 480 U.S. [678] at 684, 107 S.Ct. 1476 [94 L.Ed.2d 661 (1987)] ). In conducting this inquiry, "we must retain those portions of the Act that are (1) constitutionally valid, (2) capable of functioning independently, and (3) consistent with [the Legislature's] basic objectives in enacting the statute." [*U.S. v.*] *Booker,* 543 U.S. [220] at 258–59, 125 S.Ct. 738 [160 L.Ed.2d 621 (2005)] (internal citations and quotation marks omitted). [The Legislature's] intent serves as the basis for this severability test. *Alaska Airlines,* 480 U.S. at 685, 107 S.Ct. 1476, 94 L.Ed.2d 661.

*Hamad v. Gates,* 732 F.3d 990, 1001 (9th Cir.2013).

The Circuit Court, based on its application of severability principles, reformulated HRS § 706–656(1) in exactly the same way that the Legislature eventually did in amending HRS § 706–656(1). Construing HRS § 706–656(1) in light of *Graham* and *Miller* and its view of the Legislature's intent in enacting the statute, the Circuit Court ruled that it was required to impose a sentence of life with the possibility of parole in resentencing Tran.

### III.

In his opening brief, Tran argues that the Circuit Court erred in determining that HRS § 706–656 was severable and in construing the statute to require imposition a sentence of life with parole after the unconstitutional portion was severed. He also contends that the Circuit Court violated *Miller* in resentencing him without considering the mitigating factors of his youth at the time he committed the attempted first-degree murder. After Tran filed his opening brief, the Legislature amended HRS § 706–656(1) to address *Miller, Graham,* and *Roper.* The Legislature amended the statute to remove the mandatory sentence of life without the possibility of parole for juvenile offenders convicted of first-degree and attempted first-degree murder, and it instead imposed a mandatory sentence of life with the possibility of parole for such juvenile offenders. In his reply brief, Tran argues that the amended HRS § 706–656(1) is unconstitutional under *Miller* because it imposes a mandatory sentence on juvenile offenders without requiring individualized consideration of the mitigating factors of youth.

The Legislature's amendment of HRS § 706–656(1) in 2014 effectively eliminates the need to address Tran's severability arguments. The Legislature's amendment of HRS § 706–656(1) in exactly the same way that the Circuit Court severed the statute provides compelling evidence that the Legislature would have preferred the statute as severed and reformed by the Circuit Court to no statute at all. *See State v. Jess,* 117 Hawai'i 381, 412–13, 184 P.3d 133, 164–65 (2008). In any event, we construe the provision of Act 202 that makes the 2014 amendments to HRS § 706–656(1) applicable to "proceedings that were begun but not concluded before its effective date," 2014 Haw. Sess. Laws Act 202, § 6 at 695, to require that we apply the amended HRS § 706–656(1) to this appeal. Tran's resentencing proceeding was begun before Act 202's effective date, but was still pending on appeal

when Act 202 went into effect. Thus, Tran's resentencing proceeding had not been concluded before Act 202's effective date.

## IV.

We focus our attention on Tran's principal argument, which is that his new sentence of life with the possibility of parole is unconstitutional. Tran contends that the new sentence imposed by the Circuit Court and the amended HRS § 706–656(1), which mandates this sentence, are unconstitutional because the Circuit Court did not consider, and the amended HRS § 706–656(1) does not require a court to consider, the mitigating factors of youth in imposing the sentence of life with the possibility of parole. Tran reads *Miller* as requiring a sentencing court to conduct individualized sentencing that considers the mitigating factors of youth whenever a juvenile offender is sentenced. Under Tran's interpretation of *Miller*, which he urges this court to adopt, all sentencing schemes that impose mandatory sentences would be unconstitutional as applied to juvenile offenders.

We disagree with Tran's interpretation of *Miller*. We conclude that under the Supreme Court's precedents, the Circuit Court's resentencing of Tran to life imprisonment with the possibility of parole and HRS § 706–656(1), as amended in 2014 by Act 202 to its current form, are constitutional.

## V.

While Tran focuses on *Miller* in his arguments, we conclude that the Supreme Court precedent most directly applicable to this case is *Graham*. In *Graham*, the Supreme Court established a categorical bar on the imposition of life without the possibility of parole on juvenile offenders for nonhomicide crimes. *Graham*, 560 U.S. at 74–75, 130 S.Ct. 2011. In support of its holding, the Court noted that juveniles are less culpable than adults because they lack maturity, they are more susceptible to negative influences, and their characters are not well formed. *Id.* at 68, 130 S.Ct. 2011. It also noted the

extreme severity of the punishment of life without parole, especially for juveniles, which made it akin to a death sentence. *Id.* at 69–70, 130 S.Ct. 2011.

While categorically barring a sentence of life without parole for juvenile nonhomicide offenders, the Supreme Court in *Graham* did not bar the imposition of mandatory penalties on juvenile offenders or require a court to consider the mitigating factors of youth at the time it imposed sentence. Indeed, the Supreme Court did not require a State "to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime." *Id.* at 75, 130 S.Ct. 2011. Rather, the Supreme Court concluded that what the State must do to comply with the Eighth Amendment is to give juvenile nonhomicide offenders "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Id.* Thus, the Supreme Court held: "A State need not guarantee the [juvenile nonhomicide] offender eventual release, but if it imposes a sentence of life <u>it must provide him or her with some realistic opportunity to obtain release before the end of that term.</u>" *Id.* at 82, 130 S.Ct. 2011 (emphasis added).

Here, as the Circuit Court apparently found, Tran was convicted of a nonhomicide offense—Tran's offense of attempted first-degree murder did not result in the death of any victim. Therefore, the Circuit Court was prohibited from sentencing Tran to life without the possibility of parole based on *Graham*'s categorical bar to this sentence for juvenile nonhomicide offenders. The Circuit Court resentenced Tran to life with the possibility of parole, the sentence now mandated by HRS § 706–656(1). This sentence is permissible under *Graham* as long as Tran is provided with some meaningful or realistic opportunity to obtain release based on demonstrated maturity and rehabilitation before the end of his term. Tran does not contend that under Hawaiʻi's parole system, he will be denied a meaningful or realistic opportunity to obtain release based on demonstrated maturity and rehabilitation before the end of his life term.[5] Tran therefore has not shown

---

5. The Hawaiʻi Paroling Authority (HPA) has established "Guidelines For Establishing Minimum

Terms of Imprisonment" (HPA Guidelines) that it considers in setting the minimum term of im-

that the Circuit Court's sentence of life with the possibility of parole is unconstitutional.[6] In challenging the constitutionality of the current version of HRS § 706–656(1), Tran also has not overcome the presumption of constitutionality that attaches to legislative enactments or satisfied his burden of showing that HRS § 706–656(1), as amended in 2014, is unconstitutional beyond a reasonable doubt. *See Peroutka v. Cronin,* 117 Hawai'i 323, 326, 179 P.3d 1050, 1053 (2008).

## VI.

Tran's reliance on *Miller* in arguing that his current sentence and HRS § 706–656(1), as amended in 2014 and now in effect, are unconstitutional is misplaced. In *Miller,* the Supreme Court reasoned that a sentence of life without parole for a juvenile offender was akin to the death penalty, for which individualized sentencing and the opportunity to present mitigating factors was required, in concluding that imposing a mandatory sentence of life without parole on juvenile offenders was prohibited. *Miller,* 132 S.Ct. at 2466–69. In other words, the Court analogized life without parole for juvenile offenders to the death penalty to show why *the sentence of life without parole* could not be mandatorily imposed on juvenile offenders without individualized sentencing to consider the mitigating factors of youth. The Court did not require individualized sentencing or prohibit the imposition of mandatory sentences for juvenile offenders in all cases. Nor did the Court purport to overrule *Graham,* decided just two years earlier, which held that a life sentence for juvenile offenders was permissible as long as he or she was provided with some realistic opportunity to obtain release before the end of that term.

Our conclusion that *Miller*'s references to individualized sentencing for a juvenile offender is limited to sentences of life without parole is confirmed by the Supreme Court's recent decision in *Montgomery v. Louisiana,* —— U.S. ——, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016). In *Montgomery,* the Supreme Court considered the question of whether *Miller* should be applied retroactively to juvenile offenders whose convictions and sentences had become final before *Miller* was decided. *Montgomery,* 136 S.Ct. at 725. The Court held that *Miller* announced a new substantive rule of federal constitutional law and therefore applied retroactively to all cases, even cases that had become final before *Miller* was decided. *Id.* at 734, 736–37.

In support of its decision, the Court noted that applying *Miller* retroactively would not require States to relitigate sentences in every case in which juveniles had received a mandatory sentence of life without parole, but that a *Miller* violation could be remedied by making juvenile homicide offenders eligible for parole. *Id.* at 736. It also cited with approval a Wyoming statute which was amended after *Miller* to make juvenile offenders sentenced to life imprisonment eligible for parole after serving 25 years of incarceration. *Id.* The Court stated as follows:

> Giving *Miller* retroactive effect, moreover, does not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole. A State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them. *See, e.g.,* Wyo. Stat. Ann. § 6–10–301(c) (2013) (juvenile homicide offenders eligible for parole after 25 years).

---

prisonment a prisoner must serve before becoming eligible for parole. The HPA Guidelines contain three levels of punishment, and in determining a prisoner's level of punishment, the HPA considers a variety of criteria, including the nature of the offense, the degree of injury/loss to persons or property, and the offender's criminal history. The HPA Guidelines provide the following minimum-term ranges of imprisonment for a prisoner, like Tran, who is sentenced to life imprisonment with the possibility of parole: Level 1—5 to 10 years; Level 2—10 to 20 years; and Level 3—20 to 50 years.

**6.** We note that courts have held that *Graham* prohibits sentences which are "de facto" life sentences without parole where a juvenile offender is required to serve an extraordinary length of time before being considered for parole. *See State v. Ragland,* 836 N.W.2d 107, 118–22 (Iowa 2013). We do not preclude the possibility that a juvenile offender, such as Tran, may be able to challenge his or her sentence as a de facto life without parole sentence based on the actions of the paroling authority.

Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment.

*Id.* (emphasis added).

█ The Supreme Court's statements in *Montgomery* make clear that *Miller* does not require individualized sentencing or consideration of the mitigating factors of youth in every case involving a juvenile offender, but only where a sentence of life imprisonment without parole is imposed on a juvenile offender. Individualized sentencing is not required and mandatory sentences may be imposed for a juvenile offender provided that if a sentence of life imprisonment is imposed on a juvenile offender, he or she is given a realistic opportunity to obtain release before the end of that life term. Here, the Legislature in amending HRS § 706-656(1) in 2014 and the Circuit Court in resentencing Tran to life with the possibility of parole did precisely what the Supreme Court said in *Montgomery* would be sufficient to remedy a *Miller* violation. Accordingly, Tran's claim, based on *Miller*, that his current sentence and HRS § 706-656(1), as amended in 2014 and now in effect, are unconstitutional is without merit.[7]

### CONCLUSION

For the foregoing reasons, we affirm the Amended Judgment, which resentenced Tran to life imprisonment with the possibility of parole.

---

7. We note that courts from other jurisdictions have agreed with our analysis that *Miller* only requires individualized sentencing for juvenile offenders where a sentence of life without the possibility of parole is imposed and have upheld sentences of life with parole imposed under circumstances similar to Tran's case. *See Commonwealth v. Brown*, 466 Mass. 676, 1 N.E.3d 259 (2013); *Turner v. State*, 443 S.W.3d 128 (Tex. Crim.App.2014); *Commonwealth v. Okoro*, 471 Mass. 51, 26 N.E.3d 1092 (2015); *Ouk v. State*, 847 N.W.2d 698 (Minn.2014).